# EXHIBIT "A"

**ADJUSTABLE RATE NOTE**

**(12-MTA Index - Payment and Rate Caps)**

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. BECAUSE MY INTEREST RATE WILL CHANGE MORE FREQUENTLY THAN MY MONTHLY PAYMENT, AND BECAUSE THERE ARE LIMITATIONS ON MY MONTHLY PAYMENT INCREASES, THE AMOUNT OF MY MONTHLY PAYMENT MAY NOT FULLY PAY THE INTEREST THAT ACCRUES. AS A RESULT, THE PRINCIPAL AMOUNT I MUST REPAY COULD BE LARGER THAN THE AMOUNT I ORIGINALLY BORROWED, BUT NOT MORE THAN __125.000%__ OF THE ORIGINAL AMOUNT (OR $ __653,437.50__ ). MY INTEREST RATE CAN NEVER EXCEED THE LIMIT STATED IN THIS NOTE OR ANY RIDER TO THIS NOTE. A BALLOON PAYMENT MAY BE DUE AT MATURITY

__June 2, 2006__        __IRVINE__              __California__
                          (City)                  (State)

__38055 DEBBY LANE, Hemet, CA  92544__
                    (Property Address)

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ __522,750.00__ plus any amounts added in accordance with Section 4 (G) below, (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is __American Brokers Conduit__
_____ . I will make all payments under this Note in form of cash, check or money order. I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder".

## 2. INTEREST

Interest will be charged on unpaid Principal until the full amount has been paid. I will pay interest at a yearly rate of __1.000__ % until __June 30, 2006__ , and the initial monthly payment provided for in Section 3(B) of this Note will be based on this rate (the "Initial Rate"). Commencing __July 1, 2006__ , I will pay interest at a yearly rate of __7.232__ % (the "Subsequent Rate"). Thereafter, the interest rate I will pay may change in accordance with Section 4 of this Note. The interest rate required by this Section 2 and Section 4 of this Note is the interest rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay Principal and interest by making payments every month. In this Note, unless otherwise specified "payment" refers to the Principal and interest payment only, although other charges such as taxes, insurance and/or late charges may also be payable with the monthly payment.

I will make my monthly payments on __the 1st__ of each month beginning on __August 1, 2006__ . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied to interest before Principal. If, on __July 1, 2036__ , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date".

I will make my monthly payments at __PO Box 660029, Dallas, TX  75266-0029__
_____, or at a different place if required by the Note Holder.

Doc #  ▮▮▮▮▮▮       App# ▮▮▮▮▮       AHM-2030N(MULT) (0106)

**(B) Amount of My Initial Monthly Payments**

Each of my monthly payments until the first Payment Change Date will be in the amount of U.S. $ 1,681.37 , unless adjusted at an earlier time under Section 4(H) of this Note

**(C) Payment Changes**

My monthly payment will be recomputed, according to Sections 4(E)(F)(G)(H) and (I) of this Note, to reflect changes in the Principal balance and interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

**(A) Change Dates**

The interest rate I will pay may further change on the ___1st___ day of August, 2006 , and on that day every month thereafter. Each such date on which my interest rate could change is called a "Change Date."

**(B) The Index**

On each Change Date, my interest rate will be based on an Index. The "Index" is the Twelve-Month Average, determined as set forth below, of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (H. 15)" (the "Monthly Yields"). The Twelve-Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12.

The most recent Index figure available as the 15 days before each interest rate Change Date is called the "Current Index". If the Index is no longer available, the Note holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding _____ ___Two and 950 Thousandths_____ percentage points _2.950_ % ("Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-thousandth of one percentage point (0 001). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date. In the event a new Index is selected, pursuant to paragraph 4(B), a new Margin will be determined. The new Margin will be the difference between the average of the old Index for the most recent three year period which ends on the last date the Index was available plus the Margin on the last date the old Index was available and the average of the new Index for the most recent three year period which ends on that date (or if not available for such three year period, for such time as it is available). This difference will be rounded to the next higher 1/8 of 1%.

**(D) Interest Rate Limit**

My interest rate will never be greater than _Nine and 950 Thousandths_ _____ _____ percentage points _9.950_ % ("Cap"), except that following any sale or transfer of the property which secures repayment of this Note after the first interest rate Change Date, the maximum interest rate will be the higher of the Cap or 5 percentage points greater than the interest rate in effect at the time of such sale or transfer.

**(E) Payment Change Dates**

Effective every year commencing _August 1, 2007_ _____ , and on the same date each twelfth month thereafter ("Payment Change Date"), the Note Holder will determine the amount of the monthly payment that would be sufficient to repay the projected principal balance I am expected to owe as of the Payment Change Date in full on the Maturity Date at the interest rate that will become effective one month prior to the Payment Change Date in substantially equal payments. The result of this calculation is the new amount of

my monthly payment, subject to Section 4(F) below; and I will make payments in the new amount until the next Payment Change Date unless my payments are changed earlier under Section 4(H) of this Note.

### (F) Monthly Payment Limitations

Unless Section 4(H) and 4(I) below apply, the amounts of my new monthly payment, beginning with a Payment Change Date, will be limited to 7 ½% more or less than the amount I have been paying. This payment cap applies only to the principal and interest payment and does not apply to any escrow payments Lender may require under the Security Instrument.

### (G) Changes in My Unpaid Principal Due to Negative Amortization or Accelerated Amortization

Since my initial monthly payment will be based on the Initial Rate, which may be different than the Subsequent Rate, my initial monthly payment could be less or greater than the amount of the interest portion (the "Interest Portion") of the monthly principal and interest payment that would be sufficient to repay the unpaid Principal I owe in full on the Maturity Date in substantially equal payments.  Additionally, since my payment amount changes less frequently than the interest rate and since the monthly payment is subject to the payment limitations described in Section 4(F), my monthly payment could be less or greater than the amount of the Interest Portion.  For each month that the monthly payment is less than the Interest Portion, the Note Holder will subtract the monthly payment from the amount of the Interest Portion and will add the difference to my unpaid Principal, and interest will accrue on the amount of this difference at the current interest rate.  For each month that the monthly payment is greater than the Interest Portion, the Note Holder will apply the excess towards a principal reduction of the Note.

### (H) Limit on My Unpaid Principal; Increased Monthly Payment

My unpaid Principal can never exceed a maximum amount equal to ___125.000%___ of the principal amount originally borrowed.  In the event my unpaid Principal would otherwise exceed that ___125.000%___ limitation, I will begin paying a new monthly payment until the next Payment Change Date notwithstanding the 7 ½% annual payment increase limitation.  The new monthly payment will be an amount which would be sufficient to repay my then unpaid Principal in full on the Maturity Date at the interest rate in effect one month prior to the payment due date in substantially equal payments.

### (I) Required Full Monthly Payment

On the ___Five___ anniversary of the due date of the first monthly payment, and on that same day every ___Five___ year thereafter, the monthly payment will be adjusted without regard to the payment cap limitation in Section 4(F).

### (J) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in the amount of my monthly payment before the effective date of any change.  The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

### (K) Failure to Make Adjustments

If for any reason Note Holder fails to make an adjustment to the interest rate or payment amount as described in this Note, regardless of any notice requirement, I agree that Note Holder may, upon discovery of such failure, then make the adjustment as if they had been made on time.  I also agree not to hold Note Holder responsible for any damages to me which may result from Note Holder's failure to make the adjustment and to let the Note Holder, at its option, apply any excess monies which I may have paid to partial Prepayment of unpaid Principal.

## 5.  BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due.  A payment of Principal only is known as a "Prepayment".  When I make a Prepayment, I will tell the Note Holder in writing that I am doing so.  I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will apply all of my prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial prepayment may have the effect of reducing the amount of my monthly payments, but only after the first Payment Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit, and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**Miscellaneous Fees:** I understand that the Note Holder will also charge a return item charge in an amount permitted and otherwise in accordance with Applicable Law in the event a payment that I make in connection with repayment of this loan is not honored by the financial institution on which it is drawn. Lender reserves the right to change the fee from time to time without notice except as may be required by law.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of _____15_____ calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be __5.000__ % of my overdue payment of Principal and interest. I will pay this late charge promptly but only once for each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 10 days after the date on which the notice is delivered or mailed to me (or, if the Federal National Mortgage Association or the Federal Home Loan Mortgage Corporation buys all or part of Lender's rights under the Security Instrument, in which case the notice will specify a date, not less than 30 days from the date the notice is given to Borrower).

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note, whether or not a lawsuit is brought, to the extent not prohibited by Applicable Law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless Applicable Law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety, or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety, or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

### Transfer of the Property or a Beneficial Interest in Borrower.

If all or any part of the Property or any interest in the Property is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) the request to assume is made after one year following recordation of the Deed of Trust, (b) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (c) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument or other obligations related to the Note or other loan document is acceptable to Lender, (d) Assuming party executes Assumption Agreement acceptable to Lender at its sole choice and discretion, which Agreement may include an increase to Cap as set forth below and (e) payment of Assumption Fee if requested by Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption and Lender may increase the maximum rate limit to the higher of the Cap or 5 percentage points greater than the interest rate in effect at the time of the transfer. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates

the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender has entered into a written Assumption Agreement with transferee and formally releases Borrower.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

## 12. MISCELLANEOUS PROVISIONS

In the event the Note Holder at any time discovers that this Note or the Security Instrument or any other document related to this loan, called collectively the "Loan Documents," contains an error which was caused by a clerical or ministerial mistake, calculation error, computer error, printing error or similar error (collectively "Errors"), I agree, upon notice from the Note Holder, to reexecute any Loan Documents that are necessary to correct any such Errors and I also agree that I will not hold the Note Holder responsible for any damage to me which may result from any such Errors.

If any of the Loan Documents are lost, stolen, mutilated or destroyed and the Note Holder delivers to me an indemnification in my favor, signed by the Note Holder, then I will sign and deliver to the Note Holder a Loan Document identical in form and content which will have the effect of the original for all purposes.



WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

_____ (Seal)  
TARA STEELE        -Borrower

_____ (Seal)  
                    -Borrower

_____ (Seal)  
                    -Borrower

_____ (Seal)  
                    -Borrower

_____ (Seal)  
                    -Borrower

_____ (Seal)  
                    -Borrower

PAY TO THE ORDER OF

WITHOUT RECOURSE  
BY AMERICAN BROKERS CONDUIT

CAROL CINQUEMANI  
ASST. SECRETARY

_____ (Seal)  
                    -Borrower

## Prepayment Fee Note Addendum

This Note Addendum is made this ___2nd___ day of ___June, 2006___ and is incorporated into and shall be deemed to amend and supplement the Note made by the undersigned (the "Borrower") in favor of ___American Brokers Conduit___

(the "Lender") and dated as of even date herewith ( the "Note").

This Note Addendum amends the provision in the Note regarding the Borrower's right to prepay as follows

### BORROWER'S RIGHT TO PREPAY

I have the right to make payments of principal before they are due. Any payment of principal, before it is due, is known as a "prepayment." A prepayment of only part of the unpaid principal is known as a "partial prepayment." A prepayment of the full amount of the unpaid principal is known as a "full prepayment."

If I make a full prepayment, I may be charged a fee as follows:

If Noteholder receives a prepayment on or before the ___THIRD___ anniversary of the date of the Note, the Prepayment Fee shall be equal to ___Two___ percent ( ___2.000___ %) of the original loan amount. Thereafter, prepayment of the Note shall be permitted without any Prepayment Fee.

To the extent permitted by Applicable Law, the Prepayment Fee shall be payable upon a full prepayment, voluntary or involuntary, including but not limited to a prepayment resulting from Noteholder's permitted acceleration of the balance due on the Note. Notwithstanding the foregoing, nothing herein shall restrict my right to prepay at any time without penalty accrued but unpaid interest that has been added to principal.

When I make a full or partial prepayment I will notify the Noteholder in writing that I am doing so. Any partial prepayment of principal shall be applied to interest accrued on the amount prepaid and then to the principal balance of the Note which shall not reduce the amount of monthly installments of principal and interest (until reamortized as set forth in the Note at the next Payment Change Date) nor relieve me of the obligation to make the installments each and every month until the Note is paid in full. Partial prepayments shall have no effect upon the due dates or the amounts of my monthly payments unless the Noteholder agrees in writing to such changes.

MULTISTATE PREPAY NOTE RIDER
MTA-11 '04

AHM-2012P(Multi) (0805)

Page 1 of 2

Doc #  ██████████████████████

**NOTICE TO THE BORROWER**
**Do not sign this Note Addendum before you read it. This Note Addendum provides for the payment of a Prepayment Fee if you wish to repay the loan prior to the date provided for repayment in the Note.**

By signing below, Borrower accepts and agrees to the terms and covenants contained in this Note Addendum.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

_____ (Seal)          _____ (Seal)
TARA STEELE                  -Borrower                              -Borrower

_____ (Seal)          _____ (Seal)
                             -Borrower                              -Borrower

_____ (Seal)          _____ (Seal)
                             -Borrower                              -Borrower

_____ (Seal)          _____ (Seal)
                             -Borrower                              -Borrower

MULTISTATE PREPAY NOTE RIDER                          AHM-2012P(Multi) (0805)
MTA-11-04

Page 2 of 2

Doc # ███████████████████

Recording Requested By:

DOC # 2006-0421085
06/09/2006 08:00A Fee:78.00
Page 1 of 24
Recorded in Official Records
County of Riverside
Larry W. Ward
Assessor, County Clerk & Recorder

Return To:
American Brokers Conduit
520 Broadhollow Road
Melville, NY 11747

Prepared By:
Adalberto Soto
17744 Skypark Circle
Suite 150
Irvine, CA
92614

| M | S | U | PAGE | SIZE | DA | PCOR | NOCOR | SMF | MISC. |
|---|---|---|------|------|----|----- |-------|-----|-------|
|   |   |   |  24  |      |    |      |       |     |       |
| A | R | L |      |      |    | COPY | LONG | REFUND | NCHG | EXAM |

[Space Above '

# DEED OF TRUST

MIN

APN

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections
3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided
in Section 16.

**(A) "Security Instrument"** means this document, which is dated June 2, 2006
together with all Riders to this document.

**(B) "Borrower"** is TARA STEELE, A MARRIED WOMAN AS HER SOLE AND SEPARATE
PROPERTY

Borrower is the trustor under this Security Instrument.

**(C) "Lender"** is American Brokers Conduit

Lender is a Corporation
organized and existing under the laws of State of New York

DOC #
APPL #
CALIFORNIA -Single Family- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS   Form 3005 1/01

-6A(CA) (0005).01
UM31 9906.01   Initials:
Page 1 of 15
VMP MORTGAGE FORMS - (800)521-7291

Lender's address is 538 Broadhollow Road, Melville, NY 11747

(D) "Trustee" is LandAmerica Commonwealth

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F) "Note" means the promissory note signed by Borrower and dated   June 2, 2006
The Note states that Borrower owes Lender Five Hundred Twenty Two Thousand Seven Hundred Fifty and No/100                                                        Dollars
(U.S. $522,750.00           ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than   July 1, 2036                    .

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [x] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [x] Other(s) [specify] |

PREPAYMENT RIDER

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 3.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.



DOC [ ]                              APPL [ ]

Initials: ___

Form 3005   1/01

VMP®-6A(CA) (0005).01

**(Q) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

**TRANSFER OF RIGHTS IN THE PROPERTY**
The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the County                                    of Riverside                                    :
of Riverside

[Type of Recording Jurisdiction]                                    [Name of Recording Jurisdiction]

AS PER EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF

Parcel ID Number: ▆▆▆▆▆▆▆                                    which currently has the address of
38055 DEBBY LANE                                    [Street]
Hemet                                    [City], California 92544                                    [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances

DOC ▆▆▆▆▆▆                                    APPL ▆▆▆▆▆▆                                    Initials: ▆▆

VMP -6A(CA) (0005).01                                    Page 3 of 15                                    Form 3005  1/01

of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

DOC                              APPL



Initials: 

Form 3005   1/01

-6A(CA)  (0005).01                              Page 4 of 15

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10



DOC                              APPL

Initials:                        Form 3005   1/01

-6A(CA)   (0005).01

Page 5 of 15

days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with



DOC ███████        APPL ██████████        Initials: _____        Form 3005  1/01

███ -6A(CA) (0005).01                    Page 6 of 15

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

DOC ▆▆▆▆▆▆▆    APPL ▆▆▆▆▆▆▆



Initials:

VMP®-6A(CA) (0005).01

Page 7 of 15

Form 3005    1/01

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage**

DOC ██████                              APPL ██████

Initials: ____

Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or

DOC ████████                APPL ████████                    Initials: ____

any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict



DOC ▬▬▬            APPL-▬▬▬            Initials: _____

VMP -6A(CA) (0005).01            Page 10 of 15            Form 3005  1/01

shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

DOC ▮▮▮▮▮▮▮                    APPL ▮▮▮▮▮▮▮



Initials: _____

VMP®-6A(CA) (0005).01

Form 3005  1/01

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.



DOC [redacted]    APPL [redacted]

Initials: 

-6A(CA) (0005).01    Page 12 of 15    Form 3005  1/01

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.



DOC ▮▮▮    APPL ▮▮▮    Initials ▮▮▮    Form 3005  1/01

-6A(CA) (0005).01    Page 13 of 15

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this
Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____                    _____ (Seal)
                                                                TARA STEELE            -Borrower

_____                    _____ (Seal)
                                                                                              -Borrower

_____ (Seal)              _____ (Seal)
                              -Borrower                                                 -Borrower

_____ (Seal)              _____ (Seal)
                              -Borrower                                                 -Borrower

_____ (Seal)              _____ (Seal)
                              -Borrower                                                 -Borrower


DOC ▮▮▮▮▮                          APPL ▮▮▮▮▮▮▮▮
VMP®-6A(CA) (0005).01                      Page 14 of 15                         Form 3005  1/01

State of California
County of RIVERSIDE

} ss.

On 6/2/04                 before me, Maia Parenti, Notary Public
                                                    personally appeared

TARA STEELE

, personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to
the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of
which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____ (Seal)



MAIA PARENTI
COMM. # 1400332
NOTARY PUBLIC-CALIFORNIA
ORANGE COUNTY
COMM. EXP. FEB. 11, 2007

DOC ▮▮▮▮▮▮                    APPL▮▮▮▮▮▮▮▮

Initials:

VMP -6A(CA) (0005).01             Page 15 of 15                    Form 3005  1/01

**Prepayment Rider**

This Prepayment Rider is made this <u>2nd</u> day of <u>June, 2006</u> <u>                    </u> and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note (the "Note") to <u>American Brokers Conduit</u> <u>                    </u> <u>                    </u> (the "Lender" or "Noteholder").

of the same date and covering the Property described in the Security Instrument and located at; <u>38055 DEBBY LANE Hemet, CA 92544</u>

[Property Address]

**PREPAYMENT COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:**

I have the right to make payments of principal before they are due. Any payment of principal, before it is due, is known as a "prepayment." A prepayment of only part of the unpaid principal is known as a "partial prepayment." A prepayment of the full amount of the unpaid principal is known as a "full prepayment."

If I make a full prepayment, I may be charged a fee as follows:

If Noteholder receives a prepayment on or before the <u>THIRD</u> anniversary of the date after the execution of the Security Instrument, the Prepayment Fee shall be equal to <u>Two</u> percent ( <u>2.000</u> %) of the original loan amount. Thereafter, prepayment shall be permitted without any Prepayment Fee.

To the extent permitted by Applicable Law, the Prepayment Fee shall be payable upon a full prepayment, voluntary or involuntary, including but not limited to a prepayment resulting from Noteholder's permitted acceleration of the balance due on the Note. Notwithstanding the foregoing, nothing herein shall restrict my right to prepay at any time without penalty accrued but unpaid interest that has been added to principal.

When I make a full or partial prepayment I will notify the Noteholder in writing that I am doing so. Any partial prepayment of principal shall be applied to interest accrued on the amount prepaid and then to the principal balance of the Note which shall not reduce the amount of monthly installments of principal and interest (until reamortized as set forth in the Note at the next Payment Change Date) nor relieve me of the obligation to

make the installments each and every month until the Note is paid in full. Partial prepayments shall have no effect upon the due dates or the amounts of my monthly payments unless the Noteholder agrees in writing to such changes.

By signing below, Borrower accepts and agrees to the terms and covenants contained in this Prepayment Rider.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____(Seal)          _____(Seal)
TARA STEELE                -Borrower                                -Borrower

_____(Seal)          _____(Seal)
                           -Borrower                                -Borrower

_____(Seal)          _____(Seal)
                           -Borrower                                -Borrower

_____(Seal)          _____(Seal)
                           -Borrower                                -Borrower

MULTISTATE PREPAY SECURITY RIDER                    AHM-2013S(Mult) (0805)
MTA - 11/04

Page 2 of 2

Doc #▮▮▮▮▮  Image: ▮▮▮▮▮rn  App#▮▮▮▮▮▮▮▮          rev. 11/12/04

## ADJUSTABLE RATE RIDER

### (12-MTA Index - Payment and Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this <u>2nd</u> day of <u>June, 2006</u>, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to _____
<u>American Brokers Conduit</u>

(the "Lender") of the same date and covering the property described in the Security Instrument and located at:

<u>38055 DEBBY LANE, Hemet, CA  92544</u>

(Property Address)

THIS RIDER CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. BECAUSE MY INTEREST RATE WILL CHANGE MORE FREQUENTLY THAN MY MONTHLY PAYMENT, AND BECAUSE THERE ARE LIMITATIONS ON MY MONTHLY PAYMENT INCREASES, THE AMOUNT OF MY MONTHLY PAYMENT MAY NOT FULLY PAY THE INTEREST THAT ACCRUES. AS A RESULT, THE PRINCIPAL AMOUNT I MUST REPAY COULD BE LARGER THAN THE AMOUNT I ORIGINALLY BORROWED, BUT NOT MORE THAN <u>125.000%</u> OF THE ORIGINAL AMOUNT (OR $ <u>653,437.50</u> ). MY INTEREST RATE CAN NEVER EXCEED THE LIMIT STATED IN THE NOTE AND RIDER.   A BALLOON PAYMENT MAY BE DUE AT MATURITY.

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

### A.  INTEREST RATE AND MONTHLY PAYMENT CHANGES

Interest will be charged on unpaid Principal until the full amount has been paid.  I will pay interest at a yearly rate of <u>1.000</u> % until <u>June 30, 2006</u>, and the initial monthly payment provided for in the Note will be based on this rate.  Commencing <u>July 1, 2006</u>, I will pay interest at a yearly rate of <u>7.232</u> %.  Thereafter, the interest rate I will pay may change in accordance with Section 4 of the Note.

AHM2029R(MULT) (0106)

Doc #▆▆▆▆▆Image: ▆▆▆▆rn  App#▆▆▆▆▆

Section 4 of the Note provides for changes in the interest rate and monthly payment as follows:

## 4.  INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The interest rate I will pay may further change on the _____1st_____ day of ___August, 2006_____, and on that day every month thereafter.  Each such date on which my interest rate could change is called a "Change Date."

### (B) The Index

On each Change Date, my interest rate will be based on an Index.  The "Index" is the Twelve-Month Average, determined as set forth below, of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (H. 15)" (the "Monthly Yields").  The Twelve-Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12.

The most recent Index figure available as of the date 15 days before each Change Date is called the "Current Index".

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information.  The Note Holder will give me notice of this choice.

### (C) Interest Rate Change

Before each Change Date, the Note Holder will calculate my new interest rate by adding _Two and 950 Thousandths_____ percentage points _2.950____ % ("Margin") to the Current Index.  The Note Holder will then round the result of this addition to the nearest one-thousandth of one percentage point (0.001%).  Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.  In the event a new Index is selected, pursuant to paragraph 4(B), a new Margin will be determined. The new Margin will be the difference between the average of the old Index for the most recent three year period which ends on the last date the Index was available plus the Margin on the last date the old Index was available and the average of the new Index for the most recent three year period which ends on that date (or if not available for such three year period, for such time as it is available).  This difference will be rounded to the next higher 1/8 of 1%.

### (D) Interest Rate Limit

My interest rate will never be greater than ____9.950__ % ("Cap"), except that following any sale or transfer of the property which secures repayment of this Note after the first interest rate Change Date, the maximum interest rate will be the higher of the Cap or 5 percentage points greater than the interest rate in effect at the time of such sale or transfer.

### (E) Payment Change Dates

Effective every year commencing _____August 1st, 2007_____, and on the same date each twelfth month thereafter ("Payment Change Date"), the Note Holder will determine the amount of the monthly payment that would be sufficient to repay the projected Principal balance I am expected to owe as of the Payment Change Date in full on the maturity date at the interest rate that will become effective one month prior to the Payment Change Date in substantially equal payments. The result of this calculation is the new amount of my monthly

AHM2029R(MULT) (0106)

Doc # ▮▮▮▮▮ Image: ▮▮▮▮▮▮ App# ▮▮▮▮▮▮▮▮

payment, subject to Section 4(F) below, and I will make payments in the new amount until the next Payment Change Date unless my payments are changed earlier under Section 4(H) of the Note.

### (F) Monthly Payment Limitations

Unless Section 4(H) and 4(I) below apply, the amount of my new monthly payment, beginning with a Payment Change Date, will be limited to 7 ½% more or less than the amount I have been paying. This payment cap applies only to the principal and interest payment and does not apply to any escrow payments Lender may require under the Security Instrument.

### (G) Changes in My Unpaid Principal Due to Negative Amortization or Accelerated Amortization

Since my initial monthly payment will be based on the Initial Rate, which may be different than the Subsequent Rate, my initial monthly payment could be less or greater than the amount of the interest portion (the "Interest Portion") of the monthly principal and interest payment that would be sufficient to repay the unpaid Principal I owe in full on the maturity date in substantially equal payments. Additionally, since my payment amount changes less frequently than the interest rate and since the monthly payment is subject to the payment limitations described in Section 4(F), my monthly payment could be less or greater than the amount of the Interest Portion. For each month that the monthly payment is less than the Interest Portion, the Note Holder will subtract the monthly payment from the amount of the Interest Portion and will add the difference to my unpaid Principal, and interest will accrue on the amount of this difference at the current interest rate. For each month that the monthly payment is greater than the Interest Portion, the Note Holder will apply the excess towards a principal reduction of the Note.

### (H) Limit on My Unpaid Principal; Increased Monthly Payment

My unpaid Principal can never exceed a maximum amount equal to ____125.000%__ of the principal amount originally borrowed. In the event my unpaid Principal would otherwise exceed that ___125.000%__ limitation, I will begin paying a new monthly payment until the next Payment Change Date notwithstanding the 7 ½% annual payment increase limitation. The new monthly payment will be an amount which would be sufficient to repay my then unpaid Principal in full on the maturity date at the interest rate in effect one month prior to the payment due date in substantially equal payments.

### (I) Required Full Monthly Payment

On the ____Five____ anniversary of the due date of the first monthly payment, and on that same day every ___Five____ year thereafter, the monthly payment will be adjusted without regard to the payment cap limitation in Section 4(F).

### (J) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any questions I may have regarding the notice.

### (K) Failure to Make Adjustments

If for any reason Note Holder fails to make an adjustment to the interest rate or payment amount as described in this Note, regardless of any notice requirement, I agree that Note Holder may, upon discovery of such failure, then make the adjustment as if they had been made on time. I also agree not to hold Note Holder responsible for any damages to me which may result from Note

Doc #███████ Image: ██████rn  App# ████████

Holder's failure to make the adjustment and to let the Note Holder, at its option, apply any excess monies which I may have paid to partial prepayment of unpaid Principal.

## B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

Section 18 of the Security Instrument is amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser. If all or any part of the Property or any interest in the Property is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Agreement or other obligations related to the Note or other loan document is acceptable to Lender, (c) Assuming party executes Assumption Agreement acceptable to Lender at its sole choice and discretion, which Agreement may include an increase to Cap as set forth below and (d) payment of Assumption Fee if requested by Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption, and Lender may increase the maximum interest rate limit to the higher of the Cap or 5 percentage points greater than the interest rate in effect at the time of the transfer. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender has entered into a written assumption agreement with transferee and formally releases Borrower.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider. Borrower agrees to execute any document necessary to reform this Agreement to accurately reflect the terms of the Agreement between Borrower and Beneficiary or if the original Note, Trust Deed or other document is lost, mutilated or destroyed.

Doc # ▮▮▮▮▮ Image: ▮▮▮▮▮rn  App# ▮▮▮▮▮▮▮▮

_____ (Seal)          _____ (Seal)
TARA STEELE                          -Borrower                                        -Borrower

_____ (Seal)          _____ (Seal)
                                     -Borrower                                        -Borrower

_____ (Seal)          _____ (Seal)
                                     -Borrower                                        -Borrower

_____ (Seal)          _____ (Seal)
                                     -Borrower                                        -Borrower

AHM2029R(MULT) (0106)

Doc # ▮▮▮▮▮ Image: ▮▮▮▮▮rn  App# ▮▮▮▮▮

GOVERNMENT CODE 27361.7

I certify under penalty that the Notary Seal on the document to which this statement is
attached reads as follows:

NAME OF THE NOTARY:_____MAIA PARENTI_____
DATE COMMISSION EXPIRES:_____FEB. 11, 2007_____
COUNTY WHERE BOND IS FILED:_____ORANGE_____
COMMISSION NUMBER:____1400332____VENDOR #____M6CI____

I certify under penalty of perjury and the laws of the State of California that the illegible
portion of this document to which this statement is attached reads as follows:

PLACE OF EXECUTION:_____IRVINE_____DATE:__6-6-06__
SIGNATURE:_____

*Personally known to me (or proved to me on the basis of satisfactory evidence) to be the
person(s) is/are subscribed to the within instrument and acknowledged to me that
go/she/they executed the same in his/her/their authorized capacity(ies), and that by
his/her/their signature(s) on the instrument the person(s) or entity upon behalf of which
the person(s) acted, executed the instrument.

# EXHIBIT "A"

All that certain real property situated in the County of Riverside, State of California, described as follows:

Lot 6 of Tract 11430, in the County of Riverside, State of California, as per Map recorded in Book 106, Pages through 87, inclusive of Maps in the Office of the County Recorder of said County.

DOC # 2022-0179520
04/15/2022 09:50 AM Fees: $102.00
Page 1 of 2
Recorded in Official Records
County of Riverside
Peter Aldana
Assessor-County Clerk-Recorder

[RECORDING REQUESTED BY]
NATIONWIDE TITLE CLEARING,
LLC

[AND WHEN RECORDED MAIL TO]
PHH Mortgage Corporation
C/O Nationwide Title Clearing, LLC 2100
Alt. 19 North
Palm Harbor, FL 34683

**This document was electronically submitted
to the County of Riverside for recording**
Receipted by: TERESA #134

Loan Number ███████

## CORPORATE ASSIGNMENT OF DEED OF TRUST

**FOR GOOD AND VALUABLE CONSIDERATION**, the sufficiency of which is hereby acknowledged, the undersigned, **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS BENEFICIARY, AS NOMINEE FOR AMERICAN BROKERS CONDUIT, ITS SUCCESSORS AND ASSIGNS, (ASSIGNOR)**, (MERS Address: P.O. Box 2026, Flint, Michigan 48501-2026) by these presents does convey, grant, assign, transfer, and set over all of its rights, title, and interest in the described Deed of Trust, representation or warranty, including all liens and any rights due or to become due thereon to **DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR AMERICAN HOME MORTGAGE ASSETS TRUST 2006-2, MORTGAGE-BACKED PASS-THROUGH CERTIFICATES SERIES 2006-2, WHOSE ADDRESS IS C/O PHH MORTGAGE CORPORATION, 5720 PREMIER PARK DRIVE, WEST PALM BEACH, FL 33407, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE).**

Said Deed of Trust made by **TARA STEELE, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY**, and recorded on 06/09/2006 as <u>Doc # 2006-0421085</u>, in the office of the <u>RIVERSIDE</u> County Recorder, <u>CALIFORNIA</u>.

Dated this 13th day of April, 2022
**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS BENEFICIARY, AS NOMINEE FOR AMERICAN BROKERS CONDUIT, ITS SUCCESSORS AND ASSIGNS**

By: _____
Beverly J. Clayton
Assistant Secretary

PHHPD ███████ MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS) MIN ████████████ MERS
PHONE 1-888-679-6377 MERS Mailing Address: P.O. Box 2026, Flint, MI 48501-2026 T112204-08:48:15 [C-2] FRMCA1

Loan Number█████████

## ACKNOWLEDGEMENT

STATE OF FLORIDA
COUNTY OF PALM BEACH
The foregoing instrument was acknowledged before me by means of [X] physical presence or [ ] online notarization on this 13th day of April, 2022, by Beverly J Clayton as Assistant Secretary of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS BENEFICIARY, AS NOMINEE FOR AMERICAN BROKERS CONDUIT, ITS SUCCESSORS AND ASSIGNS, who, as such Assistant Secretary being authorized to do so, executed the foregoing instrument for the purposes therein contained. He/she/they is (are) **personally known to me**.

Yanique Atkinson Edwards
Notary Public - STATE OF FLORIDA
Commission expires:    JAN 2 4 2026

Notary Public State of Florida
Yanique Atkinson Edwards
My Commission
HH 219868
Exp. 1/24/2026

Document Prepared By: Beverly J Clayton, PHH Mortgage Corporation, a subsidiary of Ocwen Financial Corporation, 5720 Premier Park Drive West Palm Beach, FL 33407 800-210-8849
PHHPD█████MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS) MIN ████████MERS PHONE 1-888-679-6377 MERS Mailing Address: P.O. Box 2026, Flint, MI 48501-2026 T112204-08:48:15 [C-2] FRMCA1



C/O PHH Mortgage Services
1 Mortgage Way
Mt. Laurel NJ 08054

Tel 888-820-6474
Fax 856-917-8300

September 14, 2020

Loan Number: ▮▮▮▮▮▮▮▮▮
Property Address:
38055 Debby Ln
Hemet CA 92544

Tara Steele
38055 Debby Ln
Hemet CA 92544

Dear Customer(s):

Enclosed for your records, please find a copy of your fully executed Loan
Modification Agreement.

We are here to help! WAZIT ISLAM has been assigned as the account
Relationship Manager and will be the designated representative for
inquiries and submission of documents. WAZIT ISLAM is available toll-free
at 888-820-6474 Monday through Friday from 8:00 AM to 9:00 PM ET. If the
assigned Relationship Manager is unavailable to take the call, the call
will be automatically transferred to a different Relationship Manager who
will be able to assist. You can also visit our website listed below.

Sincerely,

Loan Servicing

DC002 54Z

*Log in to MortgageQuestions.com — your servicing website connection.*

# ✿ NewRez

C/O PHH Mortgage Services
1 Mortgage Way
Mt. Laurel NJ 08054

Tel 888-820-6474
Fax 856-917-8300

## Important Messages

This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is provided purely for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally. As may be required by state law, you are hereby notified that a negative credit report reflecting on an accountholder's credit record may be submitted to a credit reporting agency if credit obligation terms are not fulfilled.

## HUD Counseling

For additional assistance, the United States Department of Housing and Urban Development ("HUD"), which is a government agency, sponsors housing counseling agencies throughout the country that can provide you advice on foreclosure alternatives, budgetary issues, and even assistance with understanding this notice. There is no fee for this service. If you would like assistance, you can contact a HUD-approved housing counselor by calling 1-800-569-4287 or you can reach the HOPE Hotline number at 1-888-995-HOPE. You may also visit the HUD website at http://www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm.

## HUD Consejeria

Para obtener ayuda adicional, el Departamento de Vivienda y Desarrollo Urbano ("HUD") de Estados Unidos, que es una agencia del gobierno, patrocina agencias de asesoria de vivienda en todo el pais que le puede proporcionar asesoramiento sobre las alternativas de ejecucion hipotecaria, las cuestiones presupuestarias, e incluso la asistencia con la comprension de este aviso. No hay que pagar por este servicio. Si desea ayuda, puede ponerse en contacto con un asesor de vivienda aprobado por HUD llamando al 1-800-569-4287 o puede llegar a la Linea Directa de HOPE al 1-888-995-HOPE. Tambien puede visitar el sitio web de HUD en http://www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm.

## Requests for Information and Notices of Error, including Qualified Written Requests

If you wish to request information or assert an error relating to the servicing of your mortgage loan, including any Qualified Written Requests, you must use the address below and include your name, your mortgage loan account number, property address and a statement of either the information you are requesting or the error you believe has occurred:

PHH Mortgage Services
Post Office Box 66002
Lawrenceville, NJ 08648

## Attention Servicemembers and Dependents

Servicemember on "active duty" or "active service", or a spouse or dependent of such a servicemember may be entitled to certain legal protections and debt relief pursuant to the Servicemembers Civil Relief Act (50 USC §§ 3901-4043) (SCRA). If you are entitled to or have questions as to whether you are entitled to legal protections under the SCRA, please go to www.militaryonesource.mil/legal or call 1-800-342-9647 to find out more information. You can also contact us at 888-820-6474 if you have any questions about your rights under SCRA.

*Log in to MortgageQuestions.com --- your servicing website connection.*

Loan Number: ▓▓▓▓▓▓▓▓
Investor Loan Number: ▓▓▓▓▓▓▓▓

This document was prepared by PHH Mortgage Corporation

**After Recording Return To:**
PHH Mortgage Corporation
Attention: Modification Processing
PO Box 24737
West Palm Beach, FL 33416-9838

_____ [Space Above This Line For Recording Data] _____

## LOAN MODIFICATION AGREEMENT

Borrower (s): TARA STEELE

THIS IS A BALLOON MORTGAGE AND THE FINAL PRINCIPAL PAYMENT OR THE PRINCIPAL BALANCE DUE UPON MATURITY IS $245,904.47, TOGETHER WITH ACCRUED INTEREST, IF ANY, AND ALL ADVANCEMENTS MADE BY THE MORTGAGEE UNDER THE TERMS OF THIS MORTGAGE.

**BALLOON PAYMENT DISCLOSURE**
THIS MODIFICATION AGREEMENT INCLUDES A BALLOON PAYMENT, WHICH MEANS THAT EVEN IF YOU MAKE ALL THE SCHEDULED PAYMENTS WHEN DUE, THE LOAN WILL NOT BE PAID IN FULL AT THE END OF ITS TERM. AS A RESULT, ON THE MATURITY DATE OUTLINED WITHIN THIS AGREEMENT, YOU WILL BE REQUIRED TO REPAY, IN A SINGLE PAYMENT, THE ENTIRE REMAINING PRINCIPAL BALANCE PLUS ALL ACCRUED BUT UNPAID INTEREST AND ALL OTHER AMOUNTS OWING ON THAT DATE (INCLUDING BUT NOT LIMITED TO ALL ADVANCES MADE BY LOAN SERVICER UNDER THE TERMS OF THE SECURITY INSTRUMENT).

*CAUTION TO BORROWER: NO OBLIGATION TO REFINANCE –* LOAN SERVICER HAS NO OBLIGATION TO REFINANCE THIS LOAN OR MAKE YOU A NEW LOAN ON THE MATURITY DATE. IF YOU DO NOT HAVE THE FUNDS TO PAY THE BALLOON PAYMENT WHEN IT COMES DUE, YOU MAY HAVE TO OBTAIN A NEW LOAN AGAINST THE PROPERTY TO MAKE THE BALLOON PAYMENT. ASSUMING ANOTHER LENDER MAKES YOU A NEW LOAN ON THE MATURITY DATE, YOU WILL PROBABLY BE CHARGED INTEREST AT THE MARKET RATE PREVAILING AT THAT TIME. SUCH INTEREST RATE MAY BE HIGHER THAN THE INTEREST RATE PAID ON THIS LOAN. YOU MAY AGAIN HAVE TO PAY COMMISSIONS, FEES AND EXPENSES FOR THE ARRANGING OF THE NEW LOAN. IN ADDITION, IF YOU ARE UNABLE TO MAKE THE MONTHLY PAYMENTS OR THE BALLOON PAYMENT, YOU MAY LOSE THE PROPERTY AND ALL OF THE EQUITY THROUGH FORECLOSURE. KEEP THIS IN MIND IN DECIDING WHETHER TO AGREE TO THE TERMS OF THIS LOAN MODIFICATION.

**Please be advised, we were unable to achieve a modification option that would reduce the monthly payment; however, we were able to capitalize the delinquent balance and find a modification that is allowed by the investor of the account. If the requirements of the final Modification Agreement are complied with, the account may be modified. If this offer is not accepted, please contact us to discuss non-retention options.**

The debtor, TARA STEELE, and Deutsche Bank National Trust Company, as Trustee for American Home Mortgage Assets Trust 2006-2, Mortgage-Backed Pass-Through Certificates Series 2006-2 through the servicer of the underlying mortgage loan agreement, PHH Mortgage Corporation, have agreed to modify the terms of said underlying mortgage loan agreement. Deutsche Bank National Trust Company, as Trustee for American Home Mortgage Assets Trust 2006-2, Mortgage-Backed Pass-Through Certificates Series 2006-2 is the owner of the loan and retains all rights to collect payments as per the underlying mortgage loan agreement. PHH Mortgage Corporation, remains servicer for said underlying mortgage loan agreement.

This Loan Modification Agreement ("Agreement"), made this 30th day of July, 2020 ("Modification Agreement Date"), between TARA STEELE ("Borrower") and PHH Mortgage Corporation, Lender/Servicer or Agent for Lender/Servicer ("Lender"), amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed ("Security Instrument") dated 06/02/2006 and recorded in the Records of Riverside County, CA and (2) the Note, bearing the same date as, and secured by, the Security Instrument (collectively, "Loan Documents"), which covers the real and personal property described in the Security Instrument and defined therein as the "Property", located at

38055 DEBBY LN
HEMET, CA 92544

The real property described being set forth as follows:

**(Legal Description Attached, if applicable, for Recording Only)**

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

**Representations:**

1. Borrower is experiencing a financial hardship and as a result, 1) is or will be in default under the Loan Documents and 2) does not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments due under the Loan Documents.
2. Under penalty of perjury, if required by the Lender, borrower provided Lender with full and complete information that, when provided, accurately stated borrower's income, expenses, and assets. To the extent requested by Lender, borrower provided documents that supported that information.
3. Borrower has made any and all required trial period plan payments or down payments.
4. Borrower currently has sufficient income to support the financial obligations under the Loan Documents, as modified by this Agreement.
5. Borrower understands that property title may be reviewed as a precondition to the modification.

**Acknowledgements and Preconditions to the Modification:**

1. Lender has no obligation to make any modification of the Loan Documents if any of the requirements under this Agreement are not met.
2. Prior to the Modification Effective Date (defined as 10/01/2020), if Lender determines that any of the representations above are no longer true and correct, 1) the Loan Documents will not be modified, 2) this Agreement will not be valid, and 3) Lender will have all of the rights and remedies provided by the Loan Documents.
3. The Loan Documents will not be modified unless and until 1) Lender approves this Agreement and 2) the Modification Effective Date has occurred.

**Modified Loan Terms:**

1. If all of Borrower's representations above continue to be true and correct and all preconditions to the modification set forth above have been met, the Loan Documents will automatically become modified on 10/01/2020. If Borrower has failed to make any payments that are a precondition to this modification or receipt of clear title is not received, this modification will not take effect.

The new Maturity Date will be 09/01/2046.

Borrower understands that in order to reach an affordable payment under this modification, the loan may have been re-amortized beyond the maturity date. This means that if all payments are made in accordance with the loan terms, when Borrower reaches the maturity date, there will be an outstanding amount still due.

This amount includes an interest-bearing balloon payment in the amount of $245,904.47 ("Balloon Payment") which is due when the loan reaches maturity, sold, refinanced or otherwise accepted by the Lender as paid in full. Borrower specifically acknowledges that this is a balloon modification and therefore Borrower will have a balloon payment due at maturity in the approximate amount of $245,904.47.

BALLOON PAYMENT: THIS MORTGAGE LOAN CONTAINS A BALLOON PAYMENT PROVISION. A BALLOON PAYMENT IS A SCHEDULED LUMP SUM USUALLY DUE AT THE END OF THE MORTGAGE LOAN TERM THAT IS SIGNIFICANTLY LARGER THAN THE OTHER REGULARLY SCHEDULED PERIODIC PAYMENTS. IF YOU CANNOT PAY THE BALLOON PAYMENT WHEN DUE, YOU MAY HAVE TO OBTAIN A NEW LOAN TO MAKE THE BALLOON PAYMENT OR YOU MAY LOSE YOUR PROPERTY THROUGH FORECLOSURE. BEFORE DECIDING TO TAKE THIS LOAN, CONSIDER YOUR ABILITY TO PAY THE BALLOON PAYMENT WHEN IT COMES DUE. THE BALLOON PAYMENT ON THE MORTGAGE LOAN YOU HAVE APPLIED FOR IS DUE 311 MONTHS FROM THE DATE YOUR MORTGAGE LOAN BEGINS.

CAUTION TO BORROWER: IF YOU DO NOT HAVE THE FUNDS TO PAY THE BALLOON PAYMENT WHEN DUE, IT MAY BE NECESSARY FOR YOU TO OBTAIN A NEW LOAN AGAINST YOUR PROPERTY FOR THIS PURPOSE AND YOU MAY BE REQUIRED TO AGAIN PAY COMMISSION AND EXPENSES FOR ARRANGING THE LOAN. KEEP THIS IN MIND IN DECIDING UPON THE AMOUNT AND TERMS OF THE LOAN THAT YOU OBTAIN AT THIS TIME.

2. The current Unpaid Principal Balance is $463,299.04. The New Principal Balance of the Note will be $471,000.37 (the "New Principal Balance"). This includes amounts and arrearages that are past due as of the Modification Effective Date (including, but not limited to, unpaid and any previously deferred principal and interest, fees, escrow advances and other costs, collectively, "Unpaid Amounts") excluding any fees, costs and/or corporate advances not added to the account as of the Modification Agreement Date and amounts not added to the New Principal Balance due to investor and/or mortgage insurer restrictions less any amounts paid to the Lender but not previously credited to the Loan. Any amounts not added to the New Principal Balance will remain on the account until paid and will become due when the interest-bearing balance is paid in full or upon maturity as applicable pursuant to State or Federal law.

3. The New Principal Balance may represent the sum of the "Deferred Principal Balance" (if applicable), the "Principal Forgiveness" (if applicable) and the "Interest Bearing Principal Balance." The Interest Bearing Principal Balance is $471,000.37. Borrower understands that by agreeing to add the Unpaid Amounts to the Unpaid Principal Balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. Borrower also understands that this means interest will now accrue on the unpaid interest that is added to the New Principal Balance, which would not happen without this Agreement.

4. Borrower promises to pay the New Principal Balance, plus interest, and any future fees/costs to the order of the Lender. Interest will be charged on the Interest Bearing Principal Balance at the yearly rate of 3.625%, beginning 10/01/2020. Borrower promises to make monthly payments of principal and interest of U.S. $1,860.09, beginning on 11/01/2020 and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. Borrower promises to also pay any applicable monthly escrow payments as outlined in this Agreement. The initial monthly escrow amount is $457.77. The yearly rate of 3.625% will remain in effect until principal and interest are paid in full. If on 09/01/2046 (the "Maturity Date"), Borrower still owes amounts under the Note and the Security Instrument, as amended

by this Agreement, Borrower will pay these amounts in full on the Maturity Date. Borrower agrees to pay in full all amounts still owed under the Note and the Security Instrument by the earliest of: (i) The date Borrower sells or transfers an interest in the Property, (ii) The date Borrower pays the entire Interest Bearing Principal Balance, or (iii) the Maturity Date.

The initial monthly escrow amount is $457.77. The escrow payments may be adjusted periodically in accordance with applicable law due to changes in property taxes, insurance amounts or other escrow expenses and therefore the total monthly payment may change accordingly. The escrow payment amount shown is based on current data and represents a reasonable estimate of expenditures for future escrow obligations; however, escrow payments may be adjusted periodically in accordance with applicable law.

Borrower's payment schedule for the modified Loan is as follows:

| Years | Interest Rate (%) | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* (adjusts periodically) | Total Monthly Payment* (adjusts periodically) | Payment Begins On | Number of Monthly Payments |
|-------|-------|-------|-------|-------|-------|-------|-------|
| 1 - 25.92 | 3.625 | 10/01/2020 | $1,860.09 | $457.77 | $2,317.86 | 11/01/2020 | 311 |

*The escrow payments may be adjusted periodically in accordance with applicable law due to changes in property taxes, insurance amounts or other escrow expenses and therefore the total monthly payment may change accordingly. The escrow payment amount shown is based on current data and represents a reasonable estimate of expenditures for future escrow obligations; however, escrow payments may be adjusted periodically in accordance with applicable law.

## Additional Agreements:

1. **Transfer of Property.** If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

2. **Original Loan Document Conditions.** Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument and Note, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument and Note; however, if applicable, the following terms and provisions are forever canceled, null and void, as of 10/01/2020:

   a. all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note; and

   b. all terms and provisions of any adjustable rate rider, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

3. Borrower understands and agrees that:

   a. **Default Under the Modification.** All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

   b. **Original Loan Document Conditions.** All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the

Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender. Borrower agrees that the Loan Documents are composed of duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

   c.  **Modification Does Not Constitute Release.** Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

   d.  **Costs and Expenses.** All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender or not permitted per State or federal law.

   e.  **Agreement to Provide Any Additional Modification Documents.** Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower. Borrower will execute such other documents as may be reasonably necessary to correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement. Borrower understands that either a corrected Agreement or a letter agreement containing the correction will be provided to Borrower for Borrower's signature. At Lender's option, this Agreement will be void and of no legal effect upon notice of such error. If Borrower elects not to sign any such corrective documentation, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement. Borrower agrees to deliver any such corrective documents within ten (10) days after Borrower receives the Lender's written request for such replacement.

   f.  **Agreement of Use of Non-Public Information.** Borrower authorizes Lender, and Lender's successors and assigns, to share Borrower Information including, but not limited to (i) name, address, and telephone number, (ii) Social Security Number, (iii) credit score, (iv) income, (v) payment history, (vi) account balances and activity, including information about any modification or foreclosure relief programs, with Third Parties that can assist Lender and Borrower in obtaining a foreclosure prevention alternative, or otherwise provide support services related to Borrower's loan. For purposes of this section, Third Parties include a counseling agency, state or local Housing Finance Agency or similar entity, any insurer, guarantor, or servicer that insures, guarantees, or services Borrower's loan or any other mortgage loan secured by the Property on which Borrower is obligated, or to any companies that perform support services to them in connection with Borrower's loan.

   g.  **Consent to Contact.** Borrower consents to being contacted by Lender or Third Parties concerning mortgage assistance relating to Borrower's loan including the trial period plan to modify Borrower's loan, at any telephone number, including mobile telephone number, or email address Borrower has provided to Lender or Third Parties.

4.  **Escrow Account.** By this section, Lender is notifying Borrower that any prior waiver by Lender of Borrower's obligation to pay to Lender Funds for any or all Escrow Items is hereby revoked and Borrower has been advised of the amount needed to fully fund the Escrow Account.

Borrower will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that

Lender requires to be escrowed. These items are called "Escrow Items." Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and Borrower shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this paragraph.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender and Borrower can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to Borrower any Funds held by Lender.

5.  **Severability.** Whenever possible, each provision of this Agreement shall be interpreted in such a manner as to be effective and valid under applicable law, but if any provision of this Agreement shall be or become prohibited or invalid under applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity without invalidating the remainder of such provision or the remaining provisions of this Agreement.

6.  **Inclusion of Exhibits.** Borrower authorizes Lender to attach an Exhibit A to this Agreement, which may include a Legal Description, recording information of the original security instrument, and any other relevant information required by a County Clerk (or other recordation office) to allow for recording if and when Lender seeks recordation.

7.  **Errors and Omissions.** That if any documents related to the loan documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the Loan as modified, or is otherwise missing, Borrower will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any

documentation the Lender deems necessary. All documents the Lender requests of Borrower under this section shall be referred to as "Documents." Borrower agrees to deliver the Documents within ten (10) days after Borrower receives the Lender's written request for such replacement. At Lender's option, this Agreement will be void and of no legal effect and the loan terms will revert to the terms prior to the approved modification.

8.  **Final Agreement.** This Agreement may not be supplemented, changed, modified or omitted except by written document executed by both the Lender and the Borrower. This Modification constitutes the entire agreement between the Lender and Borrower and supersedes all previous negotiations and discussions between the Borrower and the Lender and neither prior evidence nor any prior or other agreement shall be permitted to contradict or vary its terms. There are no promises, terms, conditions, or obligations other than those contained in this Agreement.

9.  **Additional Events of Default.** Without limiting the other events of default set forth in the Loan Documents, Borrower will be in default under this Agreement and under the Loan Documents upon the occurrence of any one or more of these events:

    a.  Any material representation or warranty made by you in the Loan Documents, this Agreement, or any initial agreement proves to be false or misleading in any respect.

    b.  Borrower fails to make the New Monthly Payments as required by this Agreement.

    c.  Borrower sells or conveys any interest in the Property without Lender's prior written consent.

    d.  Breach of any of the terms or provisions of this Agreement.

10. **Consequences of Default.** If Borrower defaults under this Agreement or the Loan Documents after the Modification Effective Date (your "Default"), Lender may, in addition to the remedies provided by the Loan Documents, subject only to applicable law, institute any foreclosure or collection proceedings without prejudice for having accepted any payments, including but not limited to the New Monthly Payments, under this Agreement and exercise any of its rights and remedies against Borrower under the Loan Documents and/or this Agreement.

11. **Mortgage Insurance.** Borrower understands that the mortgage insurance premiums on the Loan, if applicable, may increase as a result of the capitalization which may result in a higher total monthly payment. Furthermore, the date on which Borrower may request cancellation of mortgage insurance may change as a result of the New Principal Balance.

12. **Credit Reporting.** Lender is required to report factual information to the credit reporting agencies. Lender may report information about the account to credit bureaus. Late payments, missed payments, or other defaults on the account may be reflected in the credit report.

13. **No Novation.** Borrower expressly agrees that this Agreement is not a new loan from Lender but simply the modification of the existing obligations under the Loan Documents. Neither Borrower nor Lender has any intention to extinguish or discharge the indebtedness or the liens evidenced by the Loan Documents.

## BORROWER ACKNOWLEDGEMENT

**IMPORTANT – Do NOT sign this Agreement unless you are in the presence of a notary. If extenuating circumstances prevent one notary signature, separately signed and notarized agreements will be accepted; however, the agreements must be returned in the same package to PHH Mortgage Corporation.**

Each of the Borrower(s) and the Lender acknowledge that no representations, agreements or promises were made by the other party or any of its representatives other than those representations, agreements or promises specifically contained herein. This Agreement, and the Note and Security Instrument (as amended hereby) set forth the entire understanding between the parties. There are no unwritten agreements between the parties.

All individuals on the mortgage, note and the property title must sign this Agreement.

8/8/20
Date

TARIK STEELE

# CALIFORNIA ALL PURPOSE CERTIFICATE OF ACKNOWLEDGEMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document, to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA                                    }

COUNTY OF _____ }

On_____ before me, _____ Notary Public,
       *Date*                                       *Insert Name and Title of the officer*

personally appeared_____

_____
                                    *Name(s) of Signer(s)*

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed this instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature:_____                    (Seal)

## LENDER ACKNOWLEDGEMENT

### (For Lender's Signature Only)

Lender acknowledges that no representations, agreements or promises were made or any of its representations other than those representations, agreements or promises specifically contained herein. This Agreement, and the Note and Security Instrument (as amended hereby) set forth the entire understanding between the parties. There are no unwritten agreements between the parties.

PHH Mortgage Corporation

*Felicia Perry*

Authorized Signer

Felicia Perry

Date

SEP 14 2020

State of _____

County of _____

On this ___ day of _____, ____, before me, the undersigned, a Notary Public in and for said county and state, personally appeared _____, personally known to me or identified to my satisfaction to be the person who executed the within instrument as _____ of PHH Mortgage Corporation., said instrument is their act and deed, and that they, being authorized to do so, executed and delivered said instrument for the purposes therein contained.

Witness my hand and official seal.

_____
Notary Public

My Commission Expires: _____